UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| REBECCA G.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 3:21cv72 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Act and for Supplemental Security Income (SSI) under Title XVI of the Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.

2. The claimant has not engaged in substantial gainful activity since August 15, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: anxiety disorder, depressive disorder, and obesity, tinnitus of the left ear; Meniere's disease, bilateral sensorineural hearing loss, fibromyalgia, and chronic fatigue (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except can occasionally climb ramps and stairs, but cannot climb ladders, ropes or scaffolds; can occasionally stoop, kneel, crawl, and crouch; must avoid exposure to unprotected heights, and hazardous or vibrating machinery and must avoid balancing on narrow, slippery, or moving surfaces; frequent fingering and handling bilaterally; occasional overhead reaching bilaterally; frequent reaching in all other directions. The claimant can tolerate no more than a moderate noise intensity level as defined by the DOT and SCO. The claimant can perform simple and routine tasks involving simple work-related decisions and occasional changes in the work setting; can have occasional interaction with co-workers and supervisors; can work in proximity to the public, but is limited to brief and superficial contact.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 19, 1973 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date and is currently 47 years old (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 15, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 25-37).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on September 12, 2021. On October 29, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on November 3, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

Plaintiff suffers from dizziness and vertigo. VNG testing revealed a caloric reduced vestibular response in the left ear exceeding the normal limit. (Tr. 687). During sensory organization testing she showed decreased reaction time and decreased range of motion in the lower extremities. (Tr. 692). She was seen for dizziness, abnormal auditory perception of both ears, and anxiety. (Tr. 628). Her dizziness is associated with lightheadedness, unsteadiness, faintness, staggering, and falling. *Id*. It is worse with rapid positional changes, laying down turning over in bed, and any movement. *Id*. When she sleeps/wakes, her left ear always hurts. (Tr. 629).

Plaintiff presented to Dr. Short for her dizziness, reporting that she still has constant dizzy spells at various degrees, and it is not easing up. (Tr. 626). She established treatment with Dr. Frappier for her balance and dizziness. (Tr. 679). She stated that she can be sitting or standing, and feels as if there is a vibration in her head. *Id*. She saw Dr. Kennedy to discuss her dizzy spells as well. (Tr. 651). She had been having dizziness and balance issues for several months that is worse with headaches. *Id*. She had to quit school. *Id*. She also noted she had no muscle strength in her hands. *Id*. Benign positional vertigo was being entertained as the diagnosis. (Tr. 652). A brain MRI was performed to assess her vertigo and dizziness, but no abnormality was demonstrated. (Tr. 560). She followed up with Dr. Frappier after starting meclizine, reporting she is still dizzy and feels as if she had been fatigued more often. (Tr. 676).

Dr. Frappier noted that Plaintiff's dizziness is due to a combination of her left vestibulopathy, anxiety, and possibly a migrainous component. (Tr. 676). She was instructed to

5

continue taking Lexapro, restart counseling for anxiety, and she was started on zonisamide to cover a migraine component. *Id*. Upon return to Dr. Kennedy she reported aches in her arms and bilateral hands as well as dizziness. (Tr. 648). It was opined that fibromyalgia was very likely and she was referred to rheumatology. (Tr. 649).

Plaintiff saw Dr. Short for asymmetrical left sensorineural hearing loss and tinnitus with ringing in her left ear. (Tr. 624). She complained of high pitched constant ringing that is mostly in the left ear, but sometimes in both ears. *Id*. She had recently started escitalopram and zonisamide for dizziness. *Id*. A new audiogram revealed unchanged sensorineural hearing loss in the left ear. (Tr. 625). She told NP Gladfelter that her dizziness was improved since starting zonisamide, but she had the hissing sound in her ears all the time and tingling in her feet. (Tr. 670). She walked with an abnormal tandem gait. (Tr. 672). Her anxiety and depression are still severe. *Id*.

Plaintiff saw Dr. Schue, a rheumatologist, for her joint pain all over with constant pulling. (Tr. 636). She has most of her pain in the morning, and with activity her pain is worse. (Tr. 637). She has swelling in her lower legs more than in her joints. *Id*. She has morning stiffness for more than an hour. *Id*. Physical examination revealed 18/18 fibromyalgia tender points. *Id*. She was diagnosed with fibromyalgia, fatigue, and obesity.(Tr. 633). At her next follow up appointment after starting Lyrica, she did not see any improvement in her pain. (Tr. 643). She had 22 tender joints and positive fibromyalgia points. *Id*. She was instructed to utilize ice or heat for twenty minutes, three to four times a day, as needed for joint discomfort. (Tr. 644). She could use over the counter topicals or patches and joint compression as needed. *Id*. She was encouraged to diet, exercise, and achieve gradual weight loss to help the strain placed on her weight-bearing joints. *Id*. Good sleep hygiene was encouraged, as well as stress reduction, stretching, and regular physical

6

exercise. *Id*. Her Lyrica dosage was increased. *Id*. She returned to Dr. Kennedy reporting she is in chronic pain.(Tr. at 645). Her pain was everywhere, but at the time of her visit she was having bilateral hand pain and lower back pain that radiates through her lower extremities. *Id*.

Plaintiff at one point reported that her dizziness was gone after starting escitalopram and zonisamide. (Tr. 667). She did still have concerns with ringing in her left ear that would not go away, and she was fatigued all the time. *Id*. On examination she had an abnormal tandem gait. (Tr. 669). She was considered stable with her dizziness and depression, and had new diagnoses of fibromyalgia and psoriatic arthritis. *Id*. Her Lexapro was stopped and she was started on Cymbalta, and her Lyrica was increased. *Id*. She told Dr. Schue that the Lyrica was making her tired, so she was instructed to not take the morning dose and her Cymbalta dose was increased. (Tr. 722). She continues to have 18/18 fibromyalgia tender points. *Id*. Dr. Frappier referred Plaintiff to physical therapy for her fibromyalgia. (Tr. 710).

Plaintiff has been deemed medically frail by the Indiana Family and Social Services Administration. (Tr. 460, 461). She stopped taking Lyrica and Cymbalta as it was not helping with the pain but making her tired. (Tr. 718). She was still having a lot of pain, mouth/tongue/ jaw pain, as well as hand pain. *Id*. She does not sleep well at night and takes four hour naps during the day. (Tr. 719). She had seven tender joints and positive fibromyalgia points. *Id*. She had pain in her hands, wrists, arms, ankles and feet. *Id*. At her next visit she had twelve tender joints. (Tr. 975). She attended ten sessions of physical therapy for her fibromyalgia. (Tr. 827). She did not achieve any cervical or lumbar strength which continued to be reduced at 3/5 with flexion, extension, and bilateral flexion and rotation. (Tr. 828). Her cervical and lumbar range of motion was the same, or somewhat worse in some fields. *Id*. She has poor posture, with rounded shoulders and increased

7

lumbar lordosis. *Id*. She rated her pain as 8-9/10 at her physical therapy evaluation. (Tr. 830). She was scheduled to continue therapy. She eventually reached a plateau with regard to her complaints of pain, though she did show improvement with overall strength and endurance.(Tr. 837). She was discharged from physical therapy after twenty sessions and planned to continue with after-care program. *Id*. Her cervical and lumbar strength, while improved, continued to be decreased, as well as her range of motion. (Tr. 838-839).

Plaintiff continued to receive counseling for her anxiety and depression. (Tr. 739-760, 779-786). At some visits she did not report any or only minimal depression or anxiety. (Tr. 743, 745, 779, 781, 783). At others, she reported having no depression but anxiety at 5/10 in severity. (Tr. 741). She had worry present more days than not, decrease in concentration observed by others, noticeable muscle tension, and some avoidance of anxiety provoking stimuli. *Id*. At her next visit she rated her depression as 5/10 and had no anxiety. (Tr. 739, 785). She has sadness present more days than not, she withdraws from activities and/or friends, and she has decrease in concentration observed by others. *Id*. At some visits she had both 5/10 depression and 5/10 anxiety with the same difficulties with sadness and worry and decreased concentration. (Tr. 747, 749, 751, 753, 755, 757, 759).

A lumbar spine x-ray showed mild dextroscoliotic deformity, minimal narrowing of the L4-5 disc space, and moderate narrowing of the L5-S1 disc space. (Tr. 902). For a time, Plaintiff's dizziness was stable, although she still had ringing in her left ear. (Tr. 819). She had recently stopped taking gabapentin for her fibromyalgia as she thought it had been ineffective. (Tr. 822). She reported to Dr. Schue that she had a burning sharp pain in her left hip area, and that Cymbalta was not working. (Tr. 971). She was having electric shock pain in her arms, and it felt like all her

8

pressure points were tender. *Id*. On examination she had eight tender joints, generalized tenderness, and tender fibromyalgia points. (Tr. 972). Her Cymbalta dose was increased. *Id*. She saw Dr. Frappier again three months later reporting her dizziness had increased again. (Tr. 812, 815). She was diagnosed with Meniere's disease. (Tr. 815).

Plaintiff saw Dr. Disher for her vestibular symptoms and sudden hearing loss on the left when background noise is present. (Tr. 799, 803). She also continues to have severe and constant tinnitus. *Id*. She noted a history of headaches, sometimes migraines, occurring once a month. *Id*. She has tried balance therapy and found it not helpful. (Tr. 80). She was given an intratympanic decadron injection. (Tr. 805). A head CT showed no abnormalities. (Tr. 807).

Plaintiff suffered a transient ischemic attack (TIA) in which she got lost while driving and almost ended up in another state not knowing how she arrived there. (Tr. 852). She did report having memory concerns for several years, as well as bilateral hypofunction with vertigo and dizziness. *Id*. An EEG was normal. (Tr. 853). A new brain MRI was taken due to transient altered mental status, but no acute intracranial abnormality was noted. (Tr. 850).

Plaintiff reported to Dr. Schue that she still had dizziness, could not drive, and had noise in her left ear. (Tr. 966). Cymbalta helps her some, but she is still tired, forgetful, and has diffuse pain. (Tr. 967). She continued to report the same issues of sound in her left ear, which keeps her awake at night. (Tr. at 854). She has fatigue, a constant whooshing noise in her left ear, and imbalance with near falls. (Tr. at 856). She continues to not drive. *Id*. She was no longer diagnosed with Meniere's disease. (Tr. at 857). She continues to have severe anxiety and depression. *Id*. She was continued on zonisamide. *Id*.

Plaintiff returned to her rheumatologist in follow up for her fibromyalgia and all over pain.

9

(Tr. 964). She felt that her pain and swelling were worse, diffuse, and more in her lower body. *Id*. She still has some tinnitus at times, but her vertigo was better. *Id*. Cymbalta helps some. *Id*. She had recently started Neurontin, but did not feel it was helping a lot and she had some baseline dizziness, so it was stopped. (Tr. 965). She continues to have tender fibromyalgia points. *Id*. She returned to Dr. Kennedy having lost some weight, but she still has a lot of fatigue and little energy. (Tr. 985). She reported having been diagnosed with obstructive sleep apnea, but she panicked with the mask on and would not finish the test. *Id*.

Plaintiff returned to physical therapy for her fibromyalgia pain. (Tr. 1038). She reported she still has the whooshing sound in her ear. *Id.* She has occasional low back pain. *Id*. She did not have any dizziness at the time. *Id*. She described her fibromyalgia pain as an electric shock or ache. *Id*. She has trouble lifting and carrying. *Id*. She has a sense of difficulty with balance if walking up stairs. *Id*. On examination she did demonstrate weakness of the bilateral upper and lower extremities, and unsteadiness when walking. *Id*.

Dr. Kennedy completed a physical RFC questionnaire based on his treatment of Plaintiff for depression, anxiety, fibromyalgia, tinnitus, and chronic pain. (Tr. 1081). Plaintiff has chronic lumbar spine pain, depression, anxiety, tinnitus and episodes of dizziness. *Id*. She had not been able to finish school and maintain gainful employment. *Id*. She complains of chronic lumbar back pain, unremitting fatigue, and tinnitus that has made it very difficult to concentrate. *Id*. She has been treated with antidepressants, but they have been only modestly helpful and she continues to have difficulties. *Id*. Her psychological conditions affect her physical conditions. *Id*. She frequently to constantly experiences pain severe enough to interfere with attention and concentration needed to perform even simple work tasks. (Tr. 1082).

10

Plaintiff returned for more counseling for her depression and anxiety. (Tr. 1086). She reported being extremely tired all the time. *Id*. She has lost interest in things and does not go out as much. *Id*. She has a hard time making decisions. *Id*. She seems to be moving slower because of her fatigue. *Id*. She reported times when she feels helpless and not worthy of anything. *Id*. She has an issue being around people. *Id*. She noted her palms get sweaty and her heart beats fast. *Id*. She worries a lot and will pace back and forth when she cannot control her worrying. *Id*. She gets irritable if things do not go her way. *Id*.

Dr. Frappier completed a physical RFC questionnaire regarding her treatment of Plaintiff for over two and a half years for dizziness, left vestibulopathy, anxiety, and depression. (Tr. 1095). Her symptoms include fatigue, dizziness, imbalance with near falls, and her left ear has a constant whooshing noise. *Id*. She has myalgias in multiple muscle groups, moderate in severity, that worsen with activity. *Id*. She has tried medication and vestibular physical therapy, which were not beneficial, and duloxetine had been partially beneficial. *Id*. Her anxiety and depression affect her physical condition as well. (Tr. 1096). She constantly has pain severe enough to interfere with attention and concentration needed to perform even simple work tasks. *Id*. She is incapable of even low stress jobs as stress increases her dizziness. *Id*. Plaintiff can walk two city blocks without rest or severe pain. *Id*. She can sit for thirty minutes at one time, and stand for fifteen minutes at one time before needing to change position. *Id*. She can sit about four hours total in an eight hour working day. (Tr. 1097). She requires the ability to walk around for about two minutes every thirty minutes, and requires a job that permits shifting positions at will from sitting, standing, or walking. *Id*. She can occasionally lift and carry less than ten pounds and rarely ten pounds. *Id*. She can never look down, up, turn her head left or right, or hold her head in a static position. *Id*. She

11

can never twist, stoop, crouch, climb ladders or balance. (Tr. 1098). She can rarely climb stairs with railings. *Id*. Her impairments are likely to produce both good days and bad days. *Id*. She could be expected to be absent more than four days per month as a result of her impairments. *Id*. She can tolerate no concentrated exposure to noise, vibration, hazards, or fumes, odors, chemicals and gases. (Tr. 1099). She can tolerate less than moderate exposure to temperature extremes, dust, and humidity/wetness. *Id*.

Dr. Frappier also completed a mental impairment questionnaire. (Tr. 1100). She noted Plaintiff has side effects from her medication including fatigue. *Id*. Her clinical findings support severe depression and severe anxiety, and there is a poor prognosis with only a slight response to medications. *Id*. Plaintiff's symptoms include decreased energy; generalized persistent anxiety; difficulty thinking or concentrating; persistent disturbances of mood or affect; easy distractibility; and memory impairment. (Tr. 1101). She is unable to meet competitive standards with regard to the abilities to remember work-like procedures; maintain attention for two hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and to deal with normal work stress. (Tr. 1103). She is also seriously limited in the ability to understand, remember and carry out very short and simple instructions; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being unduly distracted; to make simple work-related decisions; and to respond appropriately to changes in a routine work setting. *Id*. She is seriously limited with the ability to interact appropriately with the general public; to travel in unfamiliar places; and to use public transportation. (Tr. 1104). Her

12

psychiatric conditions exacerbate her experience of pain and dizziness. *Id*. She has marked difficulties understanding, remembering, or applying information; no difficulties interacting with others; marked difficulties with the ability to concentrate, persist, or maintain pace; and moderate limitations with adapting or managing oneself. (Tr. 1105). She would be likely to be absent from work more than four days per month as a result of her impairments. *Id*.

State agency record reviewers at the initial and reconsideration levels found that Plaintiff has severe impairments of fibromyalgia, anxiety, and depression. (Tr. 83, 95, 110, 123). Her mental impairments were considered under listings 12.04 and 12.06. *Id*. Under the "B" criteria of these listings it was opined that Plaintiff has moderate difficulties understanding, remembering, or applying information; no limitations interacting with others; moderate limitations with the ability to concentrate, persist, or maintain pace; and moderate difficulties adapting or managing oneself. (Tr. 83, 95, 111, 124). It was opined that Plaintiff has the residual functional capacity (RFC) to lift and/or carry fifty pounds occasionally and twenty five pounds frequently; stand and/or walk for a total of about six hours in an eight hour workday; and sit for a total of about six hours in an eight hour workday. (Tr. 85, 97, 112, 125). She is moderately limited with the ability to carry out detailed instructions; to maintain attention and concentration for extended periods; and to respond appropriately to changes in the work setting. (Tr. 87, 99, 114-115, 127-128).

At the hearing, Plaintiff testified she has a driver's license, but does not drive. (Tr. 53). Normally her husband takes her places. *Id*. Her neurologist has told her she should not be driving. *Id*. She is able to tend to her personal hygiene on good days, but not on bad days. (Tr. 54). She does not cook or prepare meals, clean, take out the trash, or grocery shop, as her husband does all of those chores. (Tr. 55-56). She only leaves the house to attend church, and only if she feels up to

13

it and it is a good day. (Tr. 56). She has fibromyalgia with chronic fatigue, daily migraines, joint and muscle pain, forgetfulness, she is tired all the time, she cannot communicate correctly, and she cannot comprehend normally. (Tr. 58). She cannot hold a pen or write messages, and her pain is horrible and excruciating. *Id*. She is very forgetful due to the vertigo, dizziness and pain. *Id*. She keeps a pain log. (Tr. 59). She has bad days, five days a week, where the pain is so bad she has to have her husband wash her hair for her. (Tr. 60). She has many more bad days than good days. *Id*. She has arthritis, vertigo, tinnitus, and anxiety. *Id*. Her arthritis is worse in her lower back, and Cymbalta only helps somewhat. (Tr. 61). She still has pain after taking medication. *Id*. She can never get comfortable, even in bed, but she frequently changes positions, uses ice and heat to try to alleviate her pain. *Id*. She spends much of her day laying down and, as she gets bad headaches and migraines every day, she usually has the lights off with no noise, a heating pad on her back and a cold pack on her forehead and eyes. (Tr. 62). Her ankles are very swollen. *Id*. She can stand for less than five minutes. (Tr. 63). She can sit for less than ten minutes. *Id*. She cannot walk a full block without pain and her breathing getting difficult. (Tr. at 64). She cannot lift a gallon of milk, and she drops pens. *Id*. She has depression and is frustrated, resentful, upset, crying, and angry all the time. *Id*. She has angry outbursts almost every day. *Id*. She has crying spells ten times a day. *Id*. She has anxiety with anxiety attacks every day for about twenty minutes. (Tr. 65). She has difficulty being around people and crowds can trigger anxiety attacks. *Id*. She does not hear well due to tinnitus in her left ear. (Tr. 67). Her vertigo affects her balance. *Id*.

In support of remand, Plaintiff first argues that the ALJ erred in her assessment of Plaintiff's subjective symptoms. The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there

14

is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 CFR §416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. . ." *Id*.

The ALJ points to mostly normal mental status exams in two exhibits (10F and 13F) to discredit Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms. (Tr. 30). With respect to social activities, the ALJ notes that Plaintiff participated in online support groups, performed her own personal care and occasionally attended church. However, these activities are not very relevant to Plaintiff's ability to engage in social activities. The ALJ also completely misquoted Plaintiff's hearing testimony about her anxiety attacks. The ALJ stated "despite stating that her symptoms of anxiety relapse and remit, she inconsistently alleged she has daily anxiety attacks 'every 20 minutes'." (Tr. 30). This is an inaccurate statement of Plaintiff's testimony. When asked how often she has anxiety attacks, Plaintiff's response was: "I have them on a daily basis. I have them - - I have them every single - - for 20 minutes, every single day, so I have an awfully hard time even being around people." (Tr. 65). Plaintiff never stated she has anxiety attacks "every 20 minutes" as the ALJ contends.

Plaintiff further points out that the ALJ displayed a misunderstanding of the evidence regarding Plaintiff's fibromyalgia. The single page of evidence the ALJ cited noted that Plaintiff had seven tender joints and fibromyalgia points positive. (Tr. 977). Plaintiff claims that the ALJ misinterpreted this finding to mean that Plaintiff had only "seven tender points reactive." (Tr. 31).

15

Plaintiff argues that, in fibromyalgia, "tender points are areas of pain around joints, but not in the joints themselves." Which, Plaintiff contends, explains the distinction in Dr. Schue's records between tender joints and fibromyalgia points in the musculoskeletal examination. Plaintiff concludes that the ALJ impermissibly "played doctor" and reached her own independent medical conclusions, due in part to a misunderstanding of the medical evidence. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong."). When the ALJ mischaracterizes significant evidence, the ALJ's reasoning does not build an "accurate and logical bridge" from the evidence to the conclusion. *See Roddy v. Astrue*, 705 F.3d 631, 637-38 (7th Cir. 2013)(reversing where ALJ "misunderstood or mischaracterized the results of the MRI"); *Steele v. Barnhart*, 290 F.3d 936, 938, 940 (7th Cir. 2002) (error where ALJ mischaracterized EEG results).

The Commissioner acknowledges that the ALJ made errors but claims, without explanation, that the errors were not dispositive of Plaintiff's claims or benefits. However, this court finds that due to the errors in characterizing the record, the ALJ's decision regarding Plaintiff's subjective symptoms is not supported by substantial evidence, and remand is required

Plaintiff further points out that the ALJ noted that Plaintiff cancelled one therapy session, (Tr. 30), yet failed to acknowledge that Plaintiff attended over 40 sessions over the course of several years. (Tr. 487 - 516, 739-760, 779-786). Likewise, regarding Plaintiff's allegations that she could only stand less than five minutes, sit less than ten minutes, and drops things she lifts or carries, the ALJ pointed to one May 2019 physical exam where she had normal strength in the bilateral shoulders and elbows. (Tr. 30-31). The ALJ failed to acknowledge the February 2020

16

physical examination that demonstrated weakness of the bilateral upper and lower extremities, and unsteadiness when walking. (Tr. 1038). The ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir.2010); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). ("[W]e cannot uphold a decision by an administrative agency . . . if . . . the reasons given . . . do not build an accurate and logical bridge between the evidence and the result.); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("In coming to his decision . . . the ALJ must confront evidence that does not support his conclusion and explain why it was rejected."). An ALJ may not select and discuss only that evidence that favors his ultimate conclusion. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). As it is clear that the ALJ "cherry-picked" the evidence on this point, remand is required for this additional reason.

Next, Plaintiff argues that the ALJ erred in the RFC assessment. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, including testimony by the claimant, as well as evidence regarding limitations that are not severe. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to her findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007).

While Plaintiff raises several issues with respect to the RFC, two points require remand.

17

First, the ALJ found chronic fatigue to be one of Plaintiff's severe impairments, (Tr. 26), yet there is no accounting for it in the RFC. Plaintiff consistently reported severe fatigue and feeling extremely tired all the time. (Tr. 488, 491, 496, 498, 499, 500, 503, 505, 506, 638, 644, 654, 658, 664, 667, 668, 671, 675, 676, 679, 681, 683, 745, 757, 791, 799, 814, 821, 829, 830, 856, 946, 953, 966, 967, 985, 986, 993, 1086). In the decision, the ALJ determined that Plaintiff's chronic fatigue syndrome did not meet or equal any listing. (Tr. 27). However, in crafting the RFC, the ALJ fails to mention how the RFC accommodates Plaintiff's chronic fatigue, even though it is a severe impairment.

Second, the ALJ also failed to account for the impact Plaintiff's obesity had on the rest of her functioning. SSR 02-1p instructs ALJs to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's RFC. At step two of the sequential evaluation, when determining if obesity is a "severe" impairment, the ALJ is to do an individualized assessment of the impact of obesity on an individual's functioning. SSR 02-1p. At step three, in determining if an impairment satisfies a listing, obesity may be a factor in both "meets" and "equals" determinations. Because there is no listing for obesity, the ALJ may find that an obese individual "meets" a listing if he or she has another impairment that, by itself, meets the requirements of a listing. Also, a listing might be met if there is an impairment that, in combination with obesity, meets the requirements of a listing. *Id*. Obesity can also cause limitation of function. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling; or the ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may also be affected. *Id*.

18

*Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004), holds that an ALJ's failure to discuss the effect of obesity on the claimant's other impairments and the RFC requires reversal. In *Barrett*, the ALJ failed to discuss the effect of the Plaintiff's obesity on her underlying arthritis condition. The Seventh Circuit stated that even if the Plaintiff's "arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as arthritic as she but not both." *Id*.

In the present case, the ALJ stated: "On July 16, 2018, the claimant's weight went had gone [sic] from 243 pounds to 261 pounds with a BMI of 44.80 (Exhibit 28F, 25F/34; 23F/5). However, despite her morbid obesity, her weight presents no greater need for limitation than as stated in the RFC. " (Tr. 32). However, the RFC details no limitations to account for Plaintiff's obesity. In fact, the RFC states that plaintiff can "occasionally" stoop, kneel, crouch, and crawl. "Occasionally" in Social Security disability parlance means up to one third of a work day, or 2 hours. The ALJ did not connect this aspect of the RFC to any medical records indicating that Plaintiff can stoop, kneel, crouch, or crawl for two hours a day, five days a week. Additionally, although the RFC restricted Plaintiff to sedentary work, sedentary work is defined as requiring standing and walking "occasionally" or up to 2 hours a workday. *See* SSR 96-9p. Again the ALJ's discussion of the medical record focuses on the few normal physical exams and ignores all the rest of the evidence, and woefully fails to consider the possible impact of Plaintiff's obesity on her other severe conditions, such as fibromyalgia. Therefore, remand is warranted.

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: November 8, 2021.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court